UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHERLA OLMSTEAD,

                                          Plaintiff,

        -v-

ANDREW SAUL,
Commissioner of Social Security,

                                          Defendant.

18-CV-985-MJR

DECISION AND ORDER

_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 9).

Plaintiff Shelia Olmstead brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Olmstead's motion (Dkt. No. 6) is granted, the Commissioner's motion (Dkt. No. 7) is denied, and this case is remanded.

## BACKGROUND

On January 13, 2011, Olmstead protectively filed an application for DIB, alleging disability as of September 1, 2009, due to OCD/anxiety/depression, anxious/trouble sleeping, fibromyalgia, chronic fatigue (worse in legs), osteoarthritis in both hands, heartburn, and high blood pressure (Tr. 233-34, 710). ).[1] Her application was denied (Tr.

---

[1] References to "Tr." are to the administrative record in this case.

104-14). Olmstead requested a hearing before an administrative law judge ("ALJ"), and such a hearing was held before ALJ Mark Solomon on April 19, 2013, at which Olmstead and her attorney appeared (Tr. 49-83, 116-17). On April 26, 2013, the ALJ issued a decision finding Olmstead not disabled through the date of the decision. Olmstead requested review from the Appeals Council, but that request was denied. (Tr. 1-5). Olmstead then appealed to this Court. (Tr. 571-75). The parties stipulated to remand of the case back to the agency for further administrative action on June 18, 2015. (Tr. 589, 594). The Appeals Council remanded the case, and on remand, ALJ William Weir consolidated the case with Olmstead's new application filed on October 29, 2014, and held a new hearing on February 9, 2018, where Olmstead was represented by counsel. (Tr. 502-53, 598, 602, 685-86). On May 9, 2018, ALJ Weir issued a decision finding Olmstead not disabled on or before December 31, 2014, the date she was last insured for purposes of entitlement to DIB. (Tr. 474-93, 706). That decision became the Commissioner's final decision after 60 days from the date of the decision with no action by Olmstead or the Appeals Council (Tr. 475). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c),

416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education,

and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Olmstead had not engaged in substantial gainful activity since September 1, 2009, her alleged onset date, through her date last insured, December 31, 2014. (Tr. 480). At step two, the ALJ concluded that Olmstead has the following severe impairments: obsessive/compulsive disorder and depressive disorder. (*Id.*). At step three, the ALJ found that Olmstead does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 481). Before proceeding to step four, the ALJ assessed Olmstead's RFC, in pertinent part, as follows:

> [T]he claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can perform simple repetitive one and two-step tasks. She should not perform complex tasks . . . . She can have one change in work place or general task per day. She should have no public and occasional coworker and supervisory contact. She should not

perform work that involves exposure to blood, bodily fluids, or any similar biological toxins.

(Tr. 482). Proceeding to step four, the ALJ found that Olmstead was not capable of performing past relevant work as a dental assistant. (Tr. 492). At step five, the ALJ found that, considering Olmstead's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Olmstead could have performed through her last insured date, namely, laundry worker, final assembler and marker. (Tr. 492-493). Accordingly, the ALJ concluded that Olmstead was not under a disability under the Act, from her alleged onset date through her last-insured date. (Tr. 493).

IV. *Olmstead's Challenge*

Olmstead argues, *inter alia*, that the ALJ erred in failing to evaluate properly fibromyalgia as a medically determinable impairment pursuant to Social Security Ruling ("SSR") 12-2p. The Court agrees.

Under SSR 12-2p, fibromyalgia is considered a medically determinable impairment if there is a physician diagnosis of fibromyalgia (which there was here) (Tr. 480) and he or she provides evidence meeting either the 1990 American College of Rheumatology Criteria for Classification of Fibromyalgia (Section II.A.) or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria (Section II.B.). SSR 12-2p, 2012 SSR Lexis 1, at *5-9 (July 25, 2012). "[T]hese two diagnostic regimes establish two different sets of specific medical findings necessary for a fibromyalgia diagnosis, either of which is sufficient to establish the impairment." See *Miller v. Colvin*, No. 6:15-CV-0552 (GTS), 2016 WL 4402035, at *6 (N.D.N.Y. Aug. 18, 2016).

Here, although the ALJ's decision addresses Section II.A. (Tr. 480), it provides no mention or analysis of Section II.B. This is an error requiring remand. See *Durodoye v. Comm'r of Soc. Sec.*, No.6:16-CV-1457 (CFH), 2018 WL 1444212, at *6 (N.D.N.Y. Mar. 20, 2018)("Therefore, the ALJ's decision does not suggest a proper analysis of the medical determinability of fibromyalgia under SSR 12-2p because it does not appear that the ALJ considered Plaintiff's fibromyalgia under both sections of SSR 12-2p").

The ALJ's failure to apply Section II.B. is not necessarily without harm as there is evidence in the record in this case that could very well support a finding that Olmstead's fibromyalgia constitutes a medically determinable impairment.

Under Section II.B., fibromyalgia can be a medially determinable impairment if all three of the following are evident:

1. A history of widespread pain;

2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

As to the first prong, the record in this case shows a history of widespread pain, as confirmed by Dr. Mark Schulte. (Tr. 459; 460; 430; 874-877; 961).

As to the second prong, when the record is viewed as a whole, there is evidence to support this prong. The record shows: fatigue or low energy level (Tr. 430; 791; 802; 844; 913; 961), cognitive or memory problems (Tr. 833; 844; 783; 913), waking

unrefreshed or abnormal sleep (Tr. 430; 789; 913; 961; 953), depression and/or anxiety (Tr. 324; 832; 402; 459; 844; 784; 789; 913; 961; 928; 1003-1004), and bowel changes (Tr. 459; 454-456; 913).

As to the third prong, there is evidence excluding other disorders that could have caused Olmstead's symptoms. Dr. Schulte excluded rheumatoid arthritis or osteoarthritis. (Tr. 431). Olmstead's gastroenterologist confirmed no specific diagnoses to account for her bowel changes. (Tr. 451-456; 780). Dr. Frank Arnal believed that Olmstead's excessive sleepiness was due to fibromyalgia rather than sleep apnea. (Tr. 953).

The Commissioner admits that the ALJ does not mention the second set of criteria in SSR 12-2p in his decision, but argues that such error is harmless because the evidence in the record does not support a finding that Olmstead's fibromyalgia constitutes a medically determinable impairment. This, however, is a *post hoc* rationalization by the Commissioner and is not permitted. "The Commissioner may not substitute her [or his] own rationale when the ALJ failed to provide one." *McFarland-Deida v. Berryhill*, No. 17-CV-6534-FPG, 2018 WL 1575273, at *4 (W.D.N.Y. Apr. 2, 2018) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action."). "The ALJ, not the Commissioner's lawyers, must build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F.Supp.2d 133, 144 (N.D.N.Y.2012) (internal quotations and citations omitted); see also *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017). The case is therefore remanded.[2]

---

[2] Olmstead argues that the case should be remanded solely for the calculation of benefits. The Court disagrees. On remand, the ALJ might very well be able to justify adequately the denial of benefits. On

## CONCLUSION

For the reasons stated, Olmstead's motion for judgment on the pleadings (Dkt. No. 6) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 7) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: March 18, 2020
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

remand, the ALJ should also consider the other claims of error Olmstead asserts here, especially the failure to provide adequate reasons for rejecting the medical opinion of Olmstead's treating physician, Dr. Paul Holley.